UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ILLUSIONS-DALLAS PRIVATE CLUB, INC., ET AL., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3: 04-CV-0201-B |
| JOHN T. STEEN, JR., ET AL., | § § § | |
| Defendants. | § | |

## MEMORANDUM ORDER

This case involves a constitutional challenge by private member sexually oriented businesses to a Texas statute that bars these types of concerns, located in "dry" areas from obtaining or renewing alcohol permits. *Illusions-Dallas Private Club v. Steen*, 482 F.3d 299, 303 (5th Cir. 2007). Plaintiffs, Illusions-Dallas Private Club, Inc. and Silver City, who operate private membership clubs that serve alcoholic beverages and provide erotic dance performances, and Plaintiffs Hotel Development Texas Ltd. and Green Start, management companies that provide food and alcohol to Illusions and Silver City, (collectively "Plaintiffs") challenge the constitutionality of the Texas Alcoholic Beverage Code. John Steen, the Chairman of the Texas Alcoholic Beverage Commission ("ABC"), Gail Madden, a Texas ABC member and Alan Steen, the Texas ABC Administrator are collectively the "Defendants." Presently before the Court is Defendants' "Motion To Reconsider November 29 Memorandum Order" (doc. 96). The issue raised - which requires some procedural context - is whether good cause exists to permit Defendants to add additional expert exhibits to their final trial exhibit list. As set forth below, the Court GRANTS the motion.

1

For procedural background, the case is back before the Court, post-appeal. On August 4, 2005, this Court granted Defendants' Motion for Summary Judgment and entered a final judgment against Plaintiffs (docs. 48, 53). In deciding the constitutionality of § 32.03(k), the Court relied upon the Seventh Circuit's, hybrid approach which includes assessing whether:

> (1) the State is regulating pursuant to a legitimate government power; (2) the regulation does not completely prohibit adult entertainment, (3) the regulation is aimed not at the suppression of expression, but rather at combating the negative secondary effects caused by adult entertainment establishments; and (4) the regulation is designed to serve a substantial government interest, narrowly tailored, and reasonable alternative avenues of communication remain available, or alternatively, the regulation furthers an important or substantial government interest and the restriction on expressive conduct is no greater than is essential in furtherance of that interest.

Doc. 48 at 7 (*citing Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702 (7th Cir. 2003)). In relevant part, the Court struck Defendants' land use studies as unauthenticated and hearsay. However, the Court permitted Defendants to meet their evidentiary burden to show a substantial government interest by relying on prior judicial opinion including, *inter alia, Baby Dolls Topless Saloons, Inc. v. City of Dallas, Texas*, 295 F.3d 471 (5th Cir. 2002). Doc. 48 at 18-20. In *Baby Dolls,* the State had successfully met its evidentiary burden relying on a study from Peter Malin that showed sexually-oriented businesses contributed to an increase in crime rates. Thus, while studies like the Malin Study had been struck as actual exhibits, the Court allowed Defendants to rely on such studies through case law. *Id.* at 19-20. Ultimately, the Court found § 32.03(k) constitutional.

On March 15, 2007, the Fifth Circuit affirmed, in part, and reversed, in part, the Court (doc. 58). The court of appeals observed that the Court's hybrid approach § 32.03(k) was permissible. 482 F.3d at 311but court remanded the action because Defendants had not met their burden at the fourth prong of the hybrid approach, namely that "the regulation is designed to serve a substantial

government interest and the restriction on expressive conduct is no greater than is essential in furtherance of that interest." *Id.* at 312. Translated, Defendants have to proffer evidence to justify the States' substantial interest and to show that § 32.03(k) is narrowly tailored. The Fifth Circuit also observed that "the record is completely devoid of any evidence that a secondary effects problem exists or that § 3203(k) furthers that interest." *Id.* at 313. The court of appeals therefore set the framework for Defendants to show that § 32.03(k) furthers a substantial government interest. Defendants must show that: (1) a substantial government interest actually exists; and (2) the statute furthers that interest. *Id.* at 312. The appellate court, in noting that Defendants have a "very light" evidentiary burden,[1] still recognized that "the outcome could potentially have been different had the land-use studies excluded by the district court remained in the record." *Id.* at 315 n.11.

Back from appeal, the case was reopened on April 10, 2007. On May 9, 2007, the Court specially set an evidentiary trial for August 20, 2007. What followed were several procedural missteps by both sides causing the Court to reset the hearing twice - accusations firing from both sides on their respective actions and responsibilities.

The procedural problems first surfaced at a pretrial conference on August 17, 2007 when Defendants' counsel advised the Court that Peter Malin, their expert and the expert in *Baby Dolls*, had unexpectedly withdrawn as a testifying expert. Defendants sought leave of the Court to add a new expert because the unexpected withdrawal of Mr. Malin left them without the very evidence

---

[1] The court of appeals noted that *City of Los Angeles v. Almeda Books, Inc.*, "requires only that the State 'demonstrate a connection between the speech regulated [by the statute] and the secondary effects that motivated the adoption of the ordinance.'" 482 F.3d at 312. The court also wryly observed that "the notion that the alcohol/erotic dancing combination is a combustible one is supported by common sense," but common sense alone cannot justify a substantial government interest. *Id.* at 313.

3

the Fifth Circuit instructed Defendants to present. Plaintiffs objected because Defendants had not disclosed Mr. Malin as an expert until they filed their July 20, 2007 witness list and had not even submitted an expert report. Plaintiffs argued that Defendants should not be entitled to replace Malin with another expert. Assessing the Rule 26(a) violation for late disclosure and weighing the factors set forth by the Fifth Circuit, the Court granted Defendants leave to identify a new expert. For Plaintiffs' benefit, the Court continued the case to afford Plaintiffs the full opportunity to review the new expert report and take additional depositions. At Plaintiffs' counsel's request, the Court also ordered Defendants to file an expert report.[2] The Court expressly opined that, with full disclosure and the opportunity to take additional depositions, "[t]he prejudice to [Plaintiffs] if the witness is allowed to testify is minimal or non-existent." Tr. 25:13-14. The Court then orally set the deadlines:

> [W]e've got the final honed-down witness list with no new people due the end of business on [August] 20th, hand-delivered or delivered to your office; the expert designation due by [September] 7th; the report due by [October] 5th. And I would think that should be a witness and exhibit list, other that obviously – what you're going to turn over to them on [August] 20th would be a witness and exhibit list *absent the expert until [September] 7th.*

Tr. 29:18-30:2 (emphasis added). Plaintiffs' counsel also asked to have 60 days from the date the Defendants submitted the new expert report to schedule additional depositions. The Court then reset the special trial setting to December 10, 2007 and issued an Amended Scheduling Order continuing the case for approximately 90 days (doc. 82).

Pursuant to the Court's revised Scheduling Order, Defendants identified their new expert, Richard McCleary, Ph. D., on September 7, 2007 (doc. 88) and served and filed Dr. McCleary's

---

[2] At the hearing, Plaintiffs' counsel asked "[w]ill we be getting a Rule 26(a) report" because he "can't schedule the deposition until [he gets] the report and see what the expert says." Tr. 28:14-15; 28:22-24.

4

report[3] on October 5, 2007 (doc. 89). Upon the service and filing of Dr. McCleary's report, Defendants also sought the Court's leave to amend the final trial exhibit list to include the exhibits identified in Dr. McCleary's October 5th expert report (doc. 90). Prior to affording Plaintiffs the opportunity to respond, the Court granted Defendants' seemingly benign motion for leave to amend the trial exhibit list (doc. 92).

On October 25, 2007, Plaintiffs moved the Court to reconsider its decision because Plaintiffs again claimed undue prejudice asserting that they were being forced to "radically reformulate" their trial strategy (doc. 93). Defendants failed to file a response. Taking Plaintiffs' motion for reconsideration at face value and overlooking its own prior oral ruling, the Court rescinded the leave granted to Defendants incorrectly believing that Plaintiffs had been "sandbagged" by Defendants (doc. 94). On December 4, 2007, Defendants filed the instant motion to reconsider, which is essentially a belated response to Plaintiffs' motion for reconsideration and - as it turned out - revealed the truth of what had happened and the disingenuous nature of Plaintiffs' motion to reconsider. The Court set the motion as the first order of business at the December 10, 2007 pretrial conference to clarify whether good cause existed to allow a modification to the Scheduling Order. On December 10, 2007, the parties appeared before the Court for a pretrial conference and for the reasons set forth below, the Court granted the Defendants' motion.

Under Federal Rule of Civil Procedure 16(b), a court will allow for the modification of a scheduling order only for good cause. A district court's decision to permit such a modification must be weighed against four factors: (1) the explanation of the failure to adhere to the scheduling order;

---

[3] The McClearly exhibits at issue are listed in Dr. McCleary's October 5th report and are primarily comprised of land-use studies.

5

(2) the importance of the discovery at issue; (3) the potential prejudice to the non-movant; and (4) the availability of a continuance to cure such prejudice. *Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997).

The Court is convinced good cause exists to allow Defendants to supplement their trial exhibit list with the McCleary exhibits. At the August 17th hearing, the Court found that Defendants were entitled to add a new expert because of the effect of the appellate opinion reversing and remanding the case and because of the last minute withdrawal of Defendants' original expert. The Court explicitly observed that the 90-day continuance would render the prejudice to Plaintiffs as "minimal or non-existent." Allowing Defendants to supplement their exhibit list is entirely consistent with the Court's ruling, precedent and common-sense. The Court previously directed Defendants to hone their witness and exhibit lists but *explicitly* noted the obvious: the witness list would obviously not have the yet to be identified expert listed. Implicit in the ruling and obvious to the Court was that any new expert exhibits could not be listed in the August 20th exhibit list.

Nevertheless, Plaintiffs have cried "undue prejudice." Their basis is their reliance on the Court's Amended Scheduling Order that the final exhibit list was to be finalized by August 20, 2007. The Court, however, finds such reliance disingenuous. When the final trial exhibit list was filed on August 20, 2007, Defendants would have obviously sought leave to add additional exhibits for an expert *not to be identified until September 7, 2007* and for an expert report *not to be served and filed until October 5, 2007*. This Court's observation of the former at the August 17th pretrial conference makes the latter patently obvious. An experienced attorney, such as Plaintiffs' counsel, cannot credibly believe that Defendants' new expert would rely solely on his report absent his exhibits. To void Dr. McCleary's report of any supporting exhibits would, in effect, strip Defendants of the very

6

evidence required by the Fifth Circuit and render a judgment for Plaintiffs - on a technicality - a foregone conclusion.

Nor can there be any true prejudice when, at Plaintiffs' counsel's request, the 60-day continuance was intended to cure the very prejudice Plaintiffs still claim. Moreover, as Defendants' counsel represented, Plaintiffs' counsel and their own expert have apparently squared off against Dr. McCleary in other forums addressing the very same issues Dr. McCleary will presumably testify about. Thus, it is difficult to fathom what radical reformulation is allegedly being forced upon Plaintiffs. Tellingly, when pressed at the hearing for precision, Plaintiffs' counsel fell back on his reliance on the Court's Scheduling Order and deferred to the arguments set forth in Plaintiffs' motion to reconsider. Shed under a new light, however, that motion avers in generalities and does not explain in concrete terms what "radical reformulation" in trial strategy or expert preparation may have been forced upon Plaintiffs. Plaintiffs' claim that they will be prejudiced because they have to review "on short notice" thousands of pages of "nuanced, complex and esoteric material" is a dubious proposition. The Court granted them the requested 60 days to do just that.

At bottom, the Court finds that Plaintiffs' claim that they have been unfairly surprised and prejudiced is nothing more than a thinly-disguised attempt to achieve a favorable judgment on process rather than substance. The Court will not permit such gamesmanship. Defendants did not purposely sandbag Plaintiffs and now credibly raise due process concerns and undue prejudice without the McCleary exhibits. In August, good cause existed to allow Defendants to bring in a new expert. Now, good cause exists to allow Defendants to supplement their exhibit list. Accordingly, the Court will permit Defendants leave to amend their final exhibit list with exhibits relied upon by Dr. McCleary.

7

Finding no prejudice to Plaintiffs, the special trial setting could have started as scheduled. However, given Plaintiffs' counsel conduct in this litigation, the Court is not convinced Plaintiffs' counsel will shy away from another opportunity at gamesmanship. To extent Plaintiffs may attempt to raise any additional prejudice, the Court *sua sponte* grants a 60-day continuance to eliminate any plausible notion of prejudice. Any further claim of prejudice due to unfair surprise from issues involving Dr. McCleary will be subject to Rule 11 scrutiny. This continuance will also afford Plaintiffs' counsel the opportunity to review Local Rule 83.8 Loss of Membership and Discipline of Attorneys.

While Defendants have pared down significantly the exhibits at issue, to ensure that this case is no longer plagued by technical arguments, the Court directs the parties to confer on the McCleary exhibits. *See Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 289-90 (N.D. Tex. 1988) (en banc) (noting purpose of discovery rules is to promote frank exchange and resolve issues by agreement).

Accordingly, the Court **ORDERS** the following:

1. **Face-to-Face Conference.** The parties shall meet face-to-face to discuss the McCleary exhibits on or before January 18, 2008. The parties may not satisfy the face-to-face requirement with telephonic conferences.

2. **Joint Status Report.** On or before February 1, 2008, the parties shall file a joint status report detailing any objections to the admissibility of any exhibit. The proponent of the exhibit shall articulate the reason and authority demonstrating the admissibility, and the opponent shall articulate the reason and authority in opposition. The joint status report must also set forth the names of the persons who

attended the face-to-face conference(s) and the length and be signed by the parties' counsel.

3.   **Final Joint Trial Exhibit List.**   On or before February 1, 2008, the parties shall also file a revised joint final trial exhibit list listing all of the exhibits in which the parties agree to the admissibility.

4.   **The special trial setting shall begin on Tuesday, February 19, 2008.**

For these foregoing reasons, Defendants' Motion is hereby GRANTED.

**SO ORDERED.**

**SIGNED December 13, 2007**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE